**Dewey Scott FRAZIER, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Dec. 28, 1977.

Certiorari Denied by Supreme Court Feb. 13, 1978.

---

Cary C. Taylor, Thomas R. Bandy, III, Kingsport, for appellant.

Brooks McLemore, Jr., Atty. Gen., Robert L. DeLaney, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., H. Greeley Wells, Asst. Atty. Gen., Blountville, for appellee.

## OPINION

TATUM, Judge.

The defendant Dewey Scott Frazier, appeals from multiple convictions in the Criminal Court of Sullivan County. He was sentenced to not less than twenty-five years nor more than forty years confinement upon his conviction for bank robbery. This sentence was enhanced to a life sentence upon the jury's verdict, finding the defendant to be an habitual criminal. He received a five-year sentence upon conviction for using a firearm during the commission of a felony, and a sentence of eleven months and twenty-nine days for an assault and battery conviction. The sentences were ordered to run consecutively.

The defendant makes twelve assignments of error, attacking the various convictions on numerous grounds. They are without merit.

In Assignments Seven, Eight and Nine, the defendant attacks the evidence and the law upon his convictions for bank robbery, use of a firearm in the commission of a felony, and assault and battery. This prompts us to summarize the accredited evidence. The evidence of the defendant's guilt of these three offenses is overwhelming. Shortly before closing time on 14 September 1976, the defendant entered the Plaza Branch of the First National Bank of Sullivan County and waited for about fifteen minutes to see Mr. Jeffrey Smith, the loan officer. Just before 4:00 o'clock P.M., he entered Mr. Smith's office and introduced himself as Doug Shelton. He discussed the possibility of a loan and had the slight odor of alcohol on his breath. After the defendant and Mr. Smith completed their conversation, they walked out of Mr. Smith's office. Mr. Smith was ready to unlock the bank's door, as the bank was then closed, when the defendant pointed a pistol at him saying, "I want your money. This is a robbery."

At gunpoint, the defendant forced Mr. Smith behind the teller's cage and told the six employees, "I want your money."

The defendant handed a brown paper bag to Mrs. Zelda Breeding, a teller, and forced her to go down the line of teller's cages and take the money from the cash drawers. He ordered the remaining employees to "hit the floor." As Mrs. Breeding removed cash from the teller's drawers, she activated the bank's alarm system and also a camera system within the bank. She also placed "bait money" in the paper sack.

The telephone rang and the defendant's gun discharged, shooting Mrs. Breeding's fingers. The defendant then forced Mr. Smith to unlock the bank door for him. The defendant did not conduct himself as an intoxicated person while in the bank. He took $4,138.00.

Mr. Smith was met by a City Policeman as he was leaving the bank. Mr. Smith asked a cleaning lady if she had seen anyone come out of the bank and the cleaning lady responded, "There they go in a car," referring to a white Corvair in which the defendant was riding. It turned west on Bloomingdale Pike. Mr. Smith gave its description and its direction of travel to the police officer.

The cleaning lady had initially seen the white Corvair in the bank parking lot with its engine running and an individual sitting at the wheel. She then saw a man run out of the bank and get into the Corvair. The cleaning lady noticed that the rear license plate of the Corvair was folded down, concealing the numbers. The cleaning lady gave FBI agents' this information about 5:00 P.M.

Police officers Gibson and Doty, after having received descriptions of the Corvair over their radio, observed the white Corvair and pursued it. The Corvair stopped and a man known by the officers to be the defendant, got out of it. The officers blocked

the Corvair with the police car and Officer Gibson apprehended the defendant after a chase on foot. The defendant had a gun when he got out of the Corvair, but it was not in his possession when he was searched and handcuffed by Officer Gibson.

Subsequent investigation revealed that the defendant placed something behind a shovel which was propped against a house in the area where the defendant was arrested, and that the defendant was seen throwing away the gun. The paper sack containing the money was found behind the shovel and the gun was found where the individual had seen it thrown by the defendant. Some of the money in the paper sack was identified by its serial numbers as the "bait money" from the bank. Sunglasses worn by the defendant during the robbery were found in the front seat of the police car which was used to transport the defendant to jail. The defendant had twenty bullets in his pocket when arrested. He had a slight odor of alcohol on his breath at the time of his arrest, but was not intoxicated. There was other evidence tending to link the defendant with these crimes but we do not deem it necessary to further detail the State's evidence.

The defendant's wife and a friend testified that the defendant took several valium capsules on the morning of the crime and drank one-half pint of pure-grain alcohol prior to robbing the bank. Another defense witness saw the defendant between 12:30 and 1:00 P.M. on the day of the robbery and saw no indication that he was intoxicated. The defendant did not testify.

■ The defendant stands before this court clothed in a presumption of guilt and the burden has now shifted to him to show that the evidence preponderated against the jury verdicts of guilty, approved by the Trial Judge. This he has failed to do. He has more than sufficient convictions to bring him within the habitual criminal statutes. We must overrule Assignments Seven, Eight and Nine. *State v. Grace*, 493 S.W.2d 474 (Tenn.1973); *Jones v. State*, 548 S.W.2d 329 (Tenn.Cr.App.1976).

■ In Assignment Ten, the defendant says that the Court erred in refusing to grant his motion to quash the indictment because it "failed to state with particularity the alleged crime as specified in the statute for bank robbery."

The statute defining bank robbery is T.C.A. § 39–3902:

"39–3902. *Bank Robbery—Penalty.*—It shall be unlawful for any person to feloniously enter any banking house or place where moneys are kept on deposit and securities of any value deposited for safekeeping and by violence or putting in fear any person therein charged with the custody, care, or keeping of such money or securities of any value, to feloniously take and remove or attempt to take and remove from such banking house any such moneys or securities of any value; and any person so doing shall be deemed guilty of the crime of bank robbery.

Any person duly convicted of bank robbery as defined in this section shall be punished by imprisonment in the state penitentiary for a term of not less than twenty (20) years nor more than forty (40) years."

The count of the indictment charging the defendant with bank robbery is as follows:

"The Grand Jurors for the State and County aforesaid, upon their oath present and say that Dewey Scott Frazier on or about September 14, 1976, and before the finding of this indictment in the State and County aforesaid did unlawfully, willfully, feloniously, forcibly and by the use of a deadly weapon, namely, a gun, *take and remove* approximately $4,138.00 *in bank funds* from the person or presence of Zelda Breeding, an employee of the Plaza Branch of the First National Bank of Sullivan County, Tennessee, who was charged with the care, custody or keeping of said monies, *which monies were in possession of the Plaza Branch of the First National Bank of Sullivan County, Tennessee, a banking house*, by putting the said Zelda Breeding in fear, contrary to the laws of the State of Tennessee, and against the peace and dignity

of the State of Tennessee. [Emphasis supplied.]

The defendant does not specify what he deems to be defective about the indictment. He says that the indictment is "so vague, general and indefinite" that it violates his Fifth and Sixth Amendment rights and "is couched in such general terms and language that not only is defendant unable to prepare his defense, but he could not plead an acquittal or conviction in bar of any other proceedings against him." The defendant cites no authority in support of his contention and is vague and indefinite as to why he deems the indictment to be "vague and indefinite."

We think the indictment meets the requirements of T.C.A. § 40–1802:

"40–1802. *Statement of offense.*—The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; and in no case are such words as 'force and arms' or 'contrary to the form of the statute' necessary."

The indictment sufficiently charged:—the robbery occurred by violence and putting Mrs. Breeding in fear; she had charge of the care, custody and keeping of the money; the money was bank funds; and, the money was taken from the possession of the bank at the banking house. The indictment stated the facts constituting the offense with sufficient certainty to enable the court to pronounce the proper judgment and to protect the defendant against a future prosecution for the same offense. The indictment was sufficient. *See, Fox v. State,* 171 Tenn. 226, 101 S.W.2d 1110 (1937); *Pope v. State,* 149 Tenn. 176, 258 S.W. 775 (1924); *State v. Witherspoon,* 115 Tenn. 138, 90 S.W. 852 (1906). Assignment Ten is overruled.

In the fourth assignment of error, the defendant complains of the Trial Court's refusal to grant his motion for a change of venue. In support of his motion, he testified on his own behalf and introduced as exhibits, several newspaper articles from a local newspaper. He also testified that there were numerous accounts of the crime over other news media. No evidence was offered to the effect that the defendant could not receive a fair trial in Sullivan County. More than one-half of the jurors accepted had read or heard nothing about the case. None of them had formed any opinion, and all stated they could base their verdict on the law and the evidence.

■■■ The mere exposure of jurors to newspaper publicity is not constitutional error. *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Swain v. State,* 219 Tenn. 145, 407 S.W.2d 452 (1966). The question of change of venue is one within the discretion of the Trial Judge and there must be a clear abuse of this discretion for this Court to reverse the action of the Trial Court. *Miller v. State,* 520 S.W.2d 729 (Tenn.1975); *Lang v. State,* 3 Tenn.Cr. App. 108, 457 S.W.2d 882 (1970). We do not find that the Trial Judge abused his discretion and this assignment is overruled.

■■ Assignment One is that the Trial Judge erred in not granting special requests for jury instructions tendered by the defendant. Assignment Five charges the Trial Judge with error in charging the jury that voluntary intoxication is not a defense to the crimes for which the defendant was on trial. The substance of the two special requests to charge was that if the defendant did not have criminal intent to commit these crimes, whether due to intoxication or other "abnormal mental or physical condition," or if the jury had a reasonable doubt as to the defendant's intent, then he should be acquitted. We find that the Trial Judge correctly and completely instructed the law relating to voluntary intoxication and criminal intent. In summary, he charged the jury that as a general rule, voluntary intoxication is no defense in a criminal case, but when a crime requires specific intent, a defendant "must be mentally capable of forming that specific intent at the time of

the commission of the act." The Trial Judge also instructed the jury at length concerning the law of insanity as a result of intoxication. We find no error in the Court's jury instructions. The law relating to "intent" was fully covered in the main charge. Assignments One and Five are overruled. *Edwards v. State*, 540 S.W.2d 641 (Tenn.1976); *Crafton v. State*, 545 S.W.2d 437 (Tenn.Cr.App.1976).

▇▇▇▇ In Assignment Two, the defendant alleges error because the Trial Judge did not declare a mistrial after the District Attorney General passed a weapon, previously admitted into evidence, to the jury for inspection during final argument. The record reflects that the District Attorney General displayed to the jury the pistol, an exhibit, during final argument, to show that it was a "hair trigger." The defendant objected and the Trial Judge sustained the objection. The Trial Judge instructed the jury to disregard arguments in the area, including the physical characteristics of the gun, as to whether it was a hair trigger. The defendant did not move for a mistrial. There is a presumption that the jury complied with the Court's instruction to disregard this argument. *Bennett v. State*, 530 S.W.2d 788 (Tenn.Cr.App.1975); *Craig v. State*, 524 S.W.2d 504 (Tenn.Cr.App.1974). The granting of a mistrial is within the discretion of the Trial Judge and we will not disturb that action absent a finding of an abuse of discretion. *Jones v. State*, 218 Tenn. 378, 403 S.W.2d 750 (1966); *Hembree v. State*, 546 S.W.2d 235 (Tenn.Cr.App. 1976). We do not find that the Trial Judge abused his discretion. Assignment Two is overruled.

▇▇▇▇ The defendant, in Assignment Three, says that the Court erred in not requiring Echol Head, an alleged accomplice, to testify. The defendant called Mr. Head to the witness stand. He refused to answer any questions, stating that he desired to avail himself of his Fifth Amendment right not to testify. He was at the time awaiting trial for the robbery of the bank. The Trial Judge did not require him to testify. While the action of the Trial

Judge in effect denied the defendant of his right to compulsory process as guaranteed under Article I, Section 9 of the Tennessee Constitution and the Sixth Amendment to the United States Constitution, the Trial Judge ruled properly. When there is a conflict in a defendant's right of compulsory process and a witness's right against self-incrimination, the right against self-incrimination is the stronger and paramount right. *United States v. Johnson*, 488 F.2d 1206 (1st Cir. 1973); *United States v. Wyler*, 487 F.2d 170 (2nd Cir. 1973); *United States v. Beye*, 445 F.2d 1037 (9th Cir. 1971); *Holsen v. United States*, 392 F.2d 292 (5th Cir. 1968). This assignment is overruled.

▇▇▇▇ In his eleventh assignment of error, the defendant says that the Court erred in allowing the State to "carve three offenses out of one continuous and uninterrupted act." We think that the offenses of bank robbery, the use of a pistol in a commission of a felony, and assault and battery are three separate and distinct offenses. Although they occurred at substantially the same time, the same evidence was not required to prove any one offense as was required to prove another. Any one of these three offenses could be committed without committing either of the other two. The elements of the three offenses are different and none of the offenses are included within the others. *See, State v. Black*, 524 S.W.2d 913 (Tenn.1975), and the cases cited therein. This assignment is overruled.

▇▇▇▇ In Assignment Six, the defendant charges that the Court erred in permitting proof of four separate convictions for escape during the defendant's trial as an habitual criminal. The defendant argues that jail escape is not an offense that falls within the scope of the statute. T.C.A. § 40–2801 (Habitual Criminal Act) provides, in part, as follows:

"Any person who has either been three (3) times convicted within this state of felonies, not less than two (2) of which are among those specified in §§ 39–604, 39–605, 39–609, 39–610, 39–3708, 40–2712,

52–1432(a)(1)(A) or were for a crime punishable by death under existing law . . . ."

The State proved that the defendant was convicted of four felonious escapes committed by the defendant on four separate and distinct occasions. The State also proved multiple convictions for burglary.

It is true that the felony of escape under T.C.A. § 39–3807 is not specified in T.C.A. § 40–2801 as being a crime for which two of the three felony convictions must be present to constitute a violation of the habitual criminal act. Two of the three convictions must be for one of the crimes specified, but the third conviction may be for any felony except petit larceny. As stated, all four of the escape convictions were felonies. It was proper for the State to prove all of the defendant's felony convictions in the habitual criminal hearing, even though the defendant had more convictions than were required under the act. This assignment is overruled.

■■■■ In Assignment Twelve, the defendant says that the Court erred in allowing the consideration of all prior convictions in establishing his status as an habitual criminal. The record reflects that the defendant was convicted for five burglaries committed on 31 March 1964. These burglaries can be counted as only one offense under T.C.A. § 40–2801. *Frazier v. State*, 485 S.W.2d 877 (Tenn.Cr.App.1972). He was convicted of two additional burglaries and four felony escapes. He has now been convicted for bank robbery.[1]

■■■ The defendant argues that he was previously adjudicated to be an habitual criminal, but the previous conviction was reversed. He says that no conviction prior to the date of his previous habitual criminal trial can now be considered as this would result in double jeopardy. He cites no authority in support of this contention. The record before us contains no information concerning the previous habitual criminal conviction, but we look to the record of this court to determine the cause for vacating the defendant's previous adjudication as an habitual criminal. *Canupp v. State*, 3 Tenn. Cr.App. 249, 460 S.W.2d 382 (1970); *State ex rel. Leighton v. Henderson*, 1 Tenn.Cr. App. 598, 448 S.W.2d 82 (1969).

In *Dewey Scott Frazier v. State*, Sullivan County No. 141 (Tenn.Crim.App. Aug. 22, 1972), this Court found there was only proof of three convictions upon which the jury could find the defendant to be an habitual criminal. One of these convictions was a conviction for forgery. The defendant was never sentenced upon this forgery conviction and it was finally "stricken from the docket" without a final judgment. This court held that for this reason, the forgery conviction could not be considered in determining the defendant to be an habitual criminal. This left only two convictions and the judgment finding the defendant to be an habitual criminal was vacated.

In the case *sub judice*, this forgery conviction was not submitted to the jury. Counting the five burglary convictions of 31 March 1964 as one conviction; there were three burglary convictions, four felony escape convictions and one bank robbery conviction. This is more than enough to bring the defendant under T.C.A. § 40–2801. Assignment Twelve is overruled.

The judgment of the Circuit Court is affirmed.

RUSSELL and DAUGHTREY, JJ., concur.

---

1. He was also convicted in the case *sub judice* of the felony of using a firearm in the commission of a felony, but this offense was committed during the bank robbery and cannot be counted in addition to the bank robbery under T.C.A. § 40–2801.