IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

OCTOBER 1998 SESSION

FILED

November 25, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 02C01-9707-CR-00273 |
| Appellee, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable W. Fred Axley, Judge |
| JOE A. IVY, | ) | |
| | ) | (Murder First Degree) |
| Appellant. | ) | |

FOR THE APPELLANT:

Paula Skahan
140 North Third Street
Memphis, TN 38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
        Nashville, TN 37243-0493

Douglas D. Himes
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

Johnny McFarland
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

# OPINION

The appellant, Joe A. Ivy, referred herein as the defendant, appeals as of right from a judgment of the Shelby County Criminal Court as a result of a jury finding him guilty of murder first degree. In accordance with the jury's verdict, the trial court sentenced the defendant to life imprisonment with the possibility of parole. The defendant presents seven (7) issues for appellate review.

1. Whether the trial court erred when it ordered the defendant to provide the State with his attorney work product as prepared by his neuropharmacology expert.

2. Whether the trial court erred by refusing to allow the defendant to call the co-defendant as a witness in defendant's case-in-chief.

3. Whether the trial court erred when it ruled as irrelevant the testimony of the defendant's proffered expert witness.

4. Whether the trial court erred when it refused to allow the defendant's lay witness to testify in the form of an opinion.

5. Whether the verdict is contrary to the law and the evidence presented at trial.

6. Whether the trial court erred when it refused to give the defendant's requested jury instruction concerning a cocaine-induced mental condition.

7. Whether the trial court erred as a matter of law when it refused to give the defendant's requested jury instruction concerning premeditation, deliberation, and specific intent.

After a review of the evidence in this record, both parties' briefs, and the applicable law, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

In April, 1996, the Shelby County grand jury returned an indictment against the defendant for murder first degree. Since there is an allegation of insufficiency of evidence to support the conviction of murder first degree, a review of the evidence in this record is necessary.

On the night of October 9, 1995, the defendant shot Calvin Hill twice with a shotgun, the second shot after Hill had fallen to the ground. Dr. O. C. Smith, forensic pathologist and medical examiner for Shelby

County, testified he conducted an autopsy on October 13, 1995 on Calvin Hill and determined Hill had died from multiple gunshot wounds. Dr. Smith found three gunshot wounds, one to the left side of the head, one to the left chin, and one to the left chest. The wound to the left chin could be consistent with the victim lying on his back. Dr. Smith testified he did not find any evidence of cocaine in the victim's body, but agreed that the victim could have ingested cocaine on the night of October 9, 1995. Dr. Smith, in his autopsy, found a prior shotgun wound to the victim's chest. Dr. Smith determined that the shotgun blasts occurred more than three feet from the victim.

Michael Dean testified he was at the defendant's home on October 9, 1995. Dean, the defendant, Kevin Price, and a man known to Dean as "Darrell" were cooking out, drinking, and smoking some "weed." Dean testified he, the defendant, Price, and Darrell left in Dean's mother's car for the Minit Stop on Getwell Road. Across the street from the Minit Stop was Chuck's Barbecue. The defendant told Dean, "Pull in here so I can talk to this guy." Dean pulled into an alley between Chuck's and a bookstore. The defendant yelled out the window, "Come over here and let me -- let me holler at you." As the man approached the car, Dean testified the defendant got out of the car and shot the man twice with a shotgun. The man was on the ground when the defendant shot him the second time. The defendant got back in the car and told Dean, "Take me to my mother's house." Dean did so and the defendant talked to his mother for five minutes. Then, the defendant had Dean take him to Forrest City, Arkansas. Dean testified he left the defendant and Darrell at a house off a dirt road. Dean did not see the defendant take the shotgun with him. Dean testified the defendant shot the victim because "he thought he would kill him first. Moose [the defendant] just said that he had been threatened by him before and that if he didn't kill him first, the Calvin guy would kill him."

Kevin Price testified he attended a cookout at the defendant's house on October 9, 1995. Price was drinking vodka and others at the house were using cocaine. Price testified he did not know how much the defendant drank that day, but he believed the defendant used some powder cocaine. Price testified he accompanied Michael Dean, the defendant, and Darrell McKinney to the store. Dean drove, the defendant was in the front passenger seat, and Price and McKinney were in the backseat. When they arrived at Chuck's Barbecue, the defendant called Hill to the car. The defendant got out and Price heard two gunshots. Price saw the defendant get back in the car with a gun. As Dean drove off, Price looked back and saw Hill on the ground. Price testified he had known the defendant for ten years, and for the last four years they drank and

3

did a variety of drugs together.

Spencer Briggs, a patrolman with the Memphis Police Department, testified he and his partner were patrolling the parking lot behind Chuck's Barbecue and Tammy's Bookstore because of recent car thefts and burglaries. While pulling into the alley between the buildings, Officer Briggs observed a male standing beside a van, which was owned by an employee of Chuck's Barbecue. Officer Briggs and his partner circled the parking lot and pulled into another parking lot to monitor the van. Officer Briggs heard two shotgun shells fire. Both officers immediately went to the scene where they found Calvin Hill lying on his left side with a gunshot wound to the head. Officer Briggs identified Hill as the male he saw by the van. Officer Briggs did not see the shooter.

Mark Bennett testified he and his father live eight miles south of Forrest City, Arkansas on a rock road. On the night of October 9, 1995, Bennett testified he heard someone knocking at his window. Bennett looked out and saw the defendant and Darrell McKinney. Bennett went out on the porch and McKinney said "they was in trouble, wanted my help . . . and Moose [the defendant] said he shot somebody." The defendant wanted some blankets and food to enable him to hide out. While going to Bennett's truck to get the blankets, the defendant said he "shot somebody, he fell down and he shot him again." The next morning Bennett told his father what had happened and his father called the sheriff. Bennett described the defendant as being scared that night.

In behalf of the defendant, Ms. Ashley Jones testified she was living with the defendant, Darrell McKinney, and Summer Dare on Vanuys Street. Ms. Jones testified the defendant consumed either a fifth of vodka or whiskey and a gram of cocaine every day. Ms. Jones knew Calvin Hill and described two occasions when the defendant and Hill had experienced problems. On the first occasion, Ms. Jones testified that Hill and another man came to the defendant's home to buy some cocaine. The defendant gave Hill the cocaine and Hill left, but later returned stating "it wasn't no good." Jones described Hill as being very angry. Jones told the defendant what had occurred.

On the second occasion, Ms. Jones testified that Summer Dare beeped her and the defendant to come home. When they arrived at the house, Calvin Hill was there. The defendant and Hill got into an

4

argument and the defendant pushed Hill outside, where Hill grabbed a metal rake and struck the defendant four or five times. The defendant ran into the house, got a knife, and returned. Then, the defendant picked up some hedge clippers and threw them at Hill who was running down the street. Ms. Jones testified, after this episode, the defendant sat in the house doing drugs and drinking.

Lisa Preslar testified she was living with her father on New Willow Road in 1994. Ms. Preslar recalled an occasion when Calvin Hill came to their home and got out of the car with a stick in his hand. Hill wanted her father. Ms. Preslar testified Hill told her father that he (Hill) wanted his money and "if nobody was there by 12:30 with the money, he was coming back and shooting up in the house and didn't care who he hit." Ms. Preslar testified she left immediately, went to the defendant's home, and told the defendant what had happened.

Lisa Blakely testified she and the defendant dated four to five years and had one child. Prior to October, 1995, Ms. Blakely lived with her father, but saw the defendant almost every day. The defendant usually came to her house about 10:00 p.m. and was usually drunk. Also, the defendant's cocaine usage had increased. Ms. Blakely testified, just before October 9, 1995, the defendant seemed upset, withdrawn, and expressed his concern that the man he was having problems with had followed him to her home.

John Carl Scheeper, an attorney and Vietnam veteran, testified he had represented the defendant in other legal matters. Prior to October 9, 1995, Mr. Scheeper testified he and the defendant met to discuss his other legal cases and the defendant told him, "Jack, I'm having a problem." Mr. Scheeper described the defendant as being scared and having fear in his eyes. Mr. Scheeper quoted the defendant, "He's been following me around all the time. He's bugging me. I don't know what to do about it, Jack."

Ms. Adriane Goodwin testified she, the defendant, Ashley Jones, and Summer Dare lived at the Vanuys Street address on October 9, 1995. Ms. Goodwin testified a cookout began about 12:30 p.m. and seven to eight people attended, including the defendant. A number of fifths of vodka was consumed between 12:30 p.m. and 8:30 p.m. Around 4:00 p.m., Ms. Goodwin, the defendant, Kevin Price, and Summer Dare shared a gram of cocaine. Ms. Goodwin recalled the defendant, Michael Dean, Kevin Price, and Darrell McKinney leaving that evening and did not see them again.

5

Ms. Summer Dare testified she, the defendant, Ashley Jones, and Darrell McKinney shared the house at the Vanuys address in October, 1995. Ms. Dare described the defendant as a heavy drinker, and he used cocaine every day if he had it. Ms. Dare testified that Calvin Hill appeared at the house one evening looking for the defendant. Hill barged in the house and asked her to call the defendant. Soon thereafter, the defendant and Ashley Jones arrived at the house. Ms. Dare testified the defendant and Hill got into a fight outside where Hill beat the defendant with a rake. Two nights later, Calvin Hill again came to her house with two carloads of people. Dare called 911 for assistance.

Ms. Dare testified she was ill on October 9, 1995 and spent most of the day in bed. Ms. Dare was aware of the cookout and that a significant amount of liquor and beer had been consumed. She arose around 4:00 p.m. and shared some food with the defendant. Ms. Dare testified the defendant and others were "rowdy . . . pretty loaded up on alcohol and drugs, too, I'm sure, made them hyper." When the police arrived later that night, Ms. Dare observed cocaine residue on the mirrors in the bedroom.

Jonathan Joseph Lipman, neuropharmacologist expert, testified he interviewed the defendant in November, 1996 to determine the effects of drugs on the defendant's brain at the time of the offense. From the interview, Dr. Lipman determined the defendant began using marijuana at age 8 or 9, drinking liquor to intoxication at age 14, and abusing LSD at age 16. Later in life, the defendant abused other drugs, methamphetamine and cocaine. At the time of the offense, the defendant was drinking all the time and using a gram of cocaine a day. Dr. Lipman testified, in his opinion, the defendant was not psychotic, but the defendant was fearful and preoccupied with his fears. Dr. Lipman testified the defendant had a genuine reason to fear the victim who was in fact making the defendant's environment fearful. The use of cocaine increased this fear.

Dr. Lipman testified that before the shooting the defendant had obtained a shotgun which he hid in the house. If the defendant had to leave the house in a car, the defendant took the shotgun with him. At the time of the offense, Dr. Lipman calculated the defendant's blood-alcohol content at .25 percent. Dr. Lipman testified the defendant remembered being out of the car and Hill walking toward him. The defendant sensed increasing threat as Hill approached, and the defendant was convinced that his life had run out. Before the defendant realized it, Hill was dead. Dr. Lipman testified that the defendant's judgment was seriously impaired

6

at the time of the offense.

The defendant elected not to testify in his own behalf.

## APPELLATE ISSUES

### A. Attorney Work Product

The defendant contends the trial court erred in ordering the defendant to provide an attorney work product prepared by Dr. Jonathan J. Lipman one week prior to trial for the benefit of the State. The State counters the trial court was not in error, in that Dr. Lipman's "confidential" letter was discoverable pursuant to Tenn. R. Crim. P. 16(b)(1)(B).

The defendant contends, in his brief, the trial court ordered Dr. Lipman's report to be given to the State under the authority of *State v. Nichols,* 877 S.W.2d 722 (Tenn. 1994). If there was a formal hearing on the merits of this issue, a record of the hearing was not submitted to this court, other than an exhibit "A" marked for appellate review. When an accused seeks appellate review of an issue in this court, it is the duty of the accused to prepare a record which conveys a fair, accurate, and complete account of what transpired with respect to the issue which forms the basis of the appeal. Tenn. R. App. P. 24(b); *State v. Bennett,* 798 S.W.2d 783 (Tenn. Crim. App. 1990), *cert. denied,* 500 U.S. 915, 111 S.Ct. 209, 114 L.Ed.2d 98 (1991); *State v. Roberts,* 755 S.W. 833, 836 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1988). However, the motion for a new trial raised this issue and we elect to consider the merits of this issue.

Tennessee Rule of Criminal Procedure 16(b)(1)(B) provides that:

> Reports of Examinations and Tests. If the defendant requests disclosure under subdivision (a)(1)(C) or (D) of this rule, upon compliance with such request by the State, the defendant, on request of the State, shall permit the State to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant which the defense intends to introduce as evidence in chief at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to the witness's testimony.

7

Tennessee Rule of Criminal Procedure 16(b)(2) provides:

> (2) Information not Subject to Disclosure. Except as to scientific and medical reports, this subdivision does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or the defendant's attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by State or defense witnesses, or by prospective State or defense witnesses, to the defendant, the defendant's agents or attorneys.

The defendant argues Dr. Lipman's letter of November 9, 1996 differs in two aspects from the holding in *Nichols,* 877 S.W.2d at 729-30. He contends one difference is that Dr. Lipman's information was "preliminary observations and conclusions" until additional information was available. The second difference is the defendant's statements to Dr. Lipman were privileged communications within the scope of Tennessee Rule of Criminal Procedure 16(b)(2). In *Nichols,* our Supreme Court concluded that when a psychologist or psychiatrist does not prepare a summary report, but instead relies on extensive memoranda to record not only observations and hypotheses but also evaluations, such records are discoverable under Rule 16(b)(1)(B). "To allow the defendant to evade the reciprocal discovery rule [by making no formal report and claiming that mere 'notes' are undiscoverable] would effectively nullify the meaning of Rule 16(b)(1)(B)...." *State v. Bell,* 690 S.W.2d 879, 883 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1985).

From a review of Dr. Lipman's testimony and Dr. Lipman's letter of November 9, 1996, we conclude that the expert's testimony tracks substantially the letter of November 9, 1996. The record establishes that the trial court granted the defendant's specific request that Dr. Lipman be hired for an evaluation as to the effect of drug abuse on the brain and testify in support of his conclusions. In his testimony, Dr. Lipman admitted he had not finalized a report and in essence adopted his eight-page letter as a report. Under these facts, we find the trial court did not commit error in ordering Dr. Lipman's letter to be given to the State. There is no merit to this issue.

## B. Failure of Trial Court to Permit Co-Defendant to Testify

The defendant contends the trial court was in error by not allowing a co-defendant, Darrell McKinney,

8

to testify as to the validity of the defendant's claim of self-defense. The State argues the trial court did not abuse its discretion in honoring the co-defendant's claim of self-incrimination.

The indictment in this cause alleged that Joe Ivy and James McKinney[1] murdered Calvin Hill on October 9, 1995. The defendant contends the defense questioning would not have incriminated McKinney, thus his invoking of the privilege was neither within the meaning nor purpose of the Fifth Amendment.

The co-defendant, James McKinney, was awaiting trial for the murder of Calvin Hill and was represented by counsel. In a jury-out hearing on the relevance of McKinney testifying, McKinney invoked his Fifth Amendment privilege upon advice of counsel. The defendant failed to convince the trial court that McKinney's testimony was relevant to the issue on trial and refused the defendant the right to call this witness.

In *State v. Dicks,* 615 S.W.2d 126, 129 (Tenn. 1981), our Supreme Court concluded "where there is a conflict between the basic right of a defendant to compulsory process and the witness's right against self-incrimination, as in this case, the right against self-incrimination is the stronger and paramount right" (quoting *Frazier v. State,* 566 S.W.2d 545, 551 (Tenn. Crim. App. 1978); *United States v. Johnson,* 488 F.2d 1206 (1st Cir. 1973)). It is the duty of the trial court to determine whether a witness has properly invoked his or her Fifth Amendment right against self-incrimination. We will not disturb such determination unless a plain abuse of that authority constitutes grounds for reversal. *State v. Zirkle,* 910 S.W.2d 874, 890 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1995). The record clearly establishes that the co-defendant, after counseling with his attorney, elected to invoke his privilege against self-incrimination. Since McKinney had not been tried for this offense, his exposure was great.[2] We find the trial court did not abuse its discretion in permitting James McKinney to invoke his Fifth Amendment right and not testify. There is no merit to this issue.

### C. Expert Testimony of Attorney John Carl Scheeper

The defendant contends the trial court erred in not permitting John Carl Scheeper to testify on the

---

[1] The trial testimony established that James McKinney and "Darrell McKinney" are one and the same person.

[2] We note the defendant wished to support his claim of self-defense through McKinney's testimony. However, two other passengers, Michael Dean and Kevin Price, friends of the defendant, testified at trial.

subject of fear as an expert pursuant to Tennessee Rule of Evidence 702. The State argues the trial court did not abuse its discretion in denying such expert testimony.

In a novel approach, the defendant alleges Mr. Scheeper should have been permitted to testify on the subject of fear. Tennessee Rule of Evidence 702 provides:

> Testimony by experts. If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

The defendant contends Scheeper has a special knowledge of fear that the average person does not have. This experience is based on Scheeper's serving in Vietnam as a member of the Third 39th Battalion of the Ninth Infantry Division in the Mekong Delta, and in playing poker. The trial court ruled, "That is so farfetched, I can't allow it." Although the trial court did not permit Scheeper to testify as an expert, Scheeper was permitted to testify as to the fear he saw in the defendant's eyes when discussing the problems the defendant was having with Calvin Hill. The qualifications, admissibility, relevancy, and competency of expert testimony are matters entrusted to the sound discretion of the trial court. *State v. Ballard,* 855 S.W.2d 557, 562 (Tenn. 1993). We find the trial court was well within its discretion in declining to find Scheeper an expert on the subject of fear. There is no merit to this issue.

### D. Defense Lay Witness Opinion

The defendant contends the trial court erred by sustaining the State's objection to the testimony of a lay witness, Lisa Blakely. The State argues the witness was permitted to testify as to her descriptions and opinion of the defendant's state of mind.

Tennessee Rule of Evidence 701(a) provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Blakely's testimony was:

BY MS. SKAHAN:

Q. You were saying what kind of conversations you were having with Joe Ivy.

A. Yes, ma'am.

Q. Could you tell us again, please?

A. I really don't remember what was said. I mean, I remember him always coming to me and talking about he didn't know what he was going to do because of him and he was scared. I mean, there was times he would come to my house and was upset.

MR. MCFARLAND: Your Honor, may we approach? I'm objecting.

THE COURT: You are objecting to?

MR. MCFARLAND: Her testimony now is not what he said, what he told her.

MS. SKAHAN: I can phrase it so that she can describe what she observed about her, if that would be acceptable with the Court.

THE COURT: She can do that. But she is telling the jury he was upset, and that is not -- you can't consider that.

MS. SKAHAN: Okay.

THE COURT: All right.

BY MS. SKAHAN:

Q. What you can talk about are your observations, what Joe said to you, but not your conclusions, okay?

A. Okay.

Q. What made you make that last statement? What did you observe about Joe?

A. I mean, I don't know what you're saying really.

THE COURT: What did you see when you looked at him?

A. What did I see when I saw him?

Q. Yes, ma'am.

A. I saw, I mean, him being upset. I mean, I don't know.


In other portions of Blakely's testimony, she testified the defendant was distant, scared, and upset.

At first blush, it appears the trial court would not permit the witness, Blakely, to testify that the defendant was

11

upset.  However, in a follow-up question, the trial court asked the witness what she saw in looking at the defendant.  We believe the trial court did permit the witness to relate to the jury her opinion that the defendant was upset.  *State v. Wingard,* 891 S.W.2d 628, 636 (Tenn. Crim. App. 1994).  There is no merit to this issue.

## E. Sufficiency of Evidence

The defendant argues the evidence presented to the jury showed there was sufficient provocation on the decedent's part to warrant the defendant acting in self-defense, and the evidence is insufficient as a matter of law to warrant a guilty verdict of murder first degree. The State contends the facts in the record in this case fully support the guilty verdict of murder first degree.

When reviewing a trial court's judgment, the appellate court will not disturb a verdict of guilty unless the facts in the record and inferences which may be drawn from it are insufficient as a matter of law for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13 (e); *State v. Tuggle,* 639 S.W.2d 913 (Tenn. 1982); *State v. Brewer,* 932 S.W.2d 1, 19 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1996). Initially, a defendant is cloaked with the presumption of innocence. *Tuggle,* 639 S.W.2d at 914. However, a jury conviction removes the presumption of innocence and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient. *Id.* In determining the sufficiency of evidence, this Court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn. 1994). This rule is applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1990).

At the time of this offense, October 9, 1995, the State was required to establish that murder first degree was "a premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation "is an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). Although the indictment alleged the additional element of deliberation, the trial court properly charged the jury to consider the elements of intent and premeditation based on the evidence. The defendant killed Calvin Hill

13

with two shots from a shotgun, one of which while the victim was on the ground. The defendant had an ongoing feud with Hill, even to the extent of buying a shotgun. The defendant believed it necessary to kill Hill before Hill killed him. On the night of the murder, the defendant secreted the shotgun in Dean's car and upon seeing Hill, the defendant called him to Dean's car. The defendant got out of the car with the shotgun and shot Hill once in the head and then once in the chin and chest. The defendant fled to avoid prosecution. The jury in this case heard the defendant's theory that he acted in self-defense, which was rejected by the jury. Thus, the jury resolves the weight and credibility to be given to each witness. *Cabbage,* 571 S.W.2d at 835. Viewing this evidence in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant intentionally killed Hill after reflection and judgment. There is no merit to this issue.

## F. Failure to Give Jury Instruction on Cocaine-Induced Mental Condition

The defendant contends the trial court erred in not giving a requested jury instruction approved in *State v. Phipps,* 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). The State argues the trial court was correct in denying the special jury instruction submitted by the defendant.

The defendant insists the trial court's instruction on intoxication, while technically accurate as including cocaine abuse, did not reflect the differences between the defendant's use of alcohol and cocaine. Thus, the trial court should have instructed the jury as to the separate issues which impaired the defendant's capacity to form intent, premeditation, and deliberation.

A defendant has a constitutional right to a correct and complete charge of the law. *State v. Teel,* 793 S.W.2d 236, 249 (Tenn. 1990); *Phipps,* 883 S.W.2d at 142. A trial judge should properly instruct the jury on the law governing issues raised by the evidence introduced at trial. *State v. McAfee,* 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). When the trial judge gives instructions that correctly, fully, and fairly set forth the applicable law, it is not error to refuse to give a special requested instruction. *State v. Bohanan,* 745 S.W.2d 892, 897 (Tenn. Crim. App. 1987), *per. app. denied* (Tenn. 1988). We must review the entire charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *Phipps,* 883 S.W.2d at 142.

14

Our review of the record indicates the defendant submitted a number of special requested jury instructions. Apparently, the defendant submitted a special jury instruction, regarding his mental condition, reflecting the holding in *State v. Phipps,* 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994). However, the defendant has failed to include this special instruction in the record for proper appellate review. The trial court denied the special request on the basis the defense charge of intoxication sufficiently applied to both alcohol and cocaine intoxication. We believe the defendant's reliance on *Phipps, supra,* is misplaced. In *Phipps,* 883 S.W.2d at 149, this court found error in the trial court's jury instruction precluding the jury from considering the expert testimony relating to the defendant's mental state on the element of intent. That is not the facts in this case. The defendant provided the jury with a significant quantity of evidence concerning the defendant's usage of alcohol and cocaine on October 9, 1995 to negate the element of an intentional killing of Calvin Hill.[3] As part of the charge on intoxication as a defense, the trial court stated, "Intoxication means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." We find the jury instruction as a whole instructed the jury that evidence of intoxication could negate the requisite mental state. There is no merit to this issue.

## G.  Trial Court's Failure to Give
## Requested Jury Instruction on Elements of Murder First Degree

The defendant contends the trial court failed to give a special requested jury instruction to the effect that once a homicide has been established it is presumed to be murder in the second degree. The State argues that the jury instructions given to the jury clearly stated the applicable law.

The defendant requested the trial court to charge the jury:

> The law in Tennessee is that once a homicide has been established it is presumed to be murder in the second degree. Accordingly, the State bears the burden of proof on the elements of premeditation and deliberation sufficient to elevate the offense to murder first degree.

---

[3] A review of the record establishes the defendant forcibly argued to the jury the amount of alcohol and cocaine consumed by the defendant on the date of the offense. Emphasis was placed on how such ingestion could negate the defendant's mens rea for the offense of several criminal homicides.

15

The trial court declined to give this special request holding that the separate instructions on murder first degree and murder second degree were the appropriate procedure. The defendant puts great emphasis on the ruling in *State v. Brown,* 836 S.W.2d 530 (Tenn. 1992), delineating the distinctions between murder first and murder second degree. We agree with the defendant that historically Tennessee law has recognized that once a homicide has been established, it is presumed to be murder second degree. At the time of this offense, the element of deliberation was not an essential element of murder first degree. At the time of this offense, October 9, 1995, the State was required to establish that murder first degree was "a premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation "is an act done after the exercise of reflection and judgment." Tenn. Code Ann. § 39-13-202(d). Although the indictment alleged the additional element of deliberation, the trial court properly charged the jury to consider the elements of intent and premeditation based on the evidence. The jury instructions on first degree murder clearly set forth the elements the State was required to prove beyond a reasonable doubt. We find any error in refusing to give the special instruction as requested was clearly harmless error. *State v. Antonio M. Byrd,* Shelby County No. 02C01-9508-CR-00232 (Tenn. Crim. App., Jackson, December 30, 1996). We find no merit to this issue.

The trial court's judgment is affirmed.

_____
L. T. LAFFERTY, SPECIAL JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
DAVID G. HAYES, JUDGE