LOVVORN *v.* STATE.

(*Nashville,* December Term, 1950'.)

Opinion filed July 27, 1951.

C. L. CUMMINGS, and CUMMINGS & MELTON, all of Murfreesboro, for appellant.

KNOX BIGHAM, Assistant Attorney General, for the State.

Mr. Justice Prewitt delivered the opinion of the Court.

The defendant Howard Lovvorn was convicted of voluntary manslaughter and his punishment fixed at a sentence of not more than ten years in prison. The killing took place in Murfreesboro, about 1:30 p. m. on Sunday, at the home of the defendant. The principal witness for the state, C. D. Vance, captain of the Murfreesboro police department, received a call that Bill Loughery had been killed at the defendant's home. He and General Hoyte Stewart, District Attorney General, and other police officers went to the home of the defendant. The deceased was lying inside of the front room of the home, had been shot in the chest with a shotgun and was dead. When the officers arrived, the defendant and his wife were on the front porch. The state's proof is that the defendant told Vance that the deceased had come to his home looking for Howard Reeves and his wife who lived next door. Upon learning that Reeves did not live there, the deceased went inside the house of the defendant and offered him a drink; defendant said he did not want a drink and told the deceased to get out; that the deceased started to go out and when he got to the front door, turned around and made some unpleasant remark to the defendant and when this occurred, the defendant shot him.

The state's proof further shows that the officers found the shotgun on the back porch where the defendant said it was. After the defendant was taken to jail, the

witness Vance returned to the defendant's home and helped clean up the room where the body was found and he stated that he found no weapons anywhere in the room. On the day following the shooting, the defendant. signed a written statement containing the same information he had given the officers at his home on the day of the shooting.

The defendant testified on the trial that when the deceased came to his home, he offered defendant a drink and that he refused; that deceased took a drink of liquor, threw the bottle out the back door and asked if the Reeves family was at home; that thereupon, the deceased referred to Reeves by a bad name, that he told the deceased to get out, that he did not want him cursing in front of his wife and mother-in-law but that the deceased continued to curse and tried to get the defendant to order him a pint of whiskey; that the deceased took some money and a knife from his pocket, laid it on the kitchen table and gave a five dollar bill to the defendant's stepdaughter, who was to get it changed and take enough of the money to go to a picture show; that the defendant put the change in his pocket and also a knife which had the picture of a nude woman on the handle; that the defendant's mother-in-law took deceased by the arm and led him towards the front door and that the deceased broke away from her and cursed the defendant, saying that he would get him. The defendant further testified that then he got his shotgun, which was hanging up on a rack over the door, that the deceased kept coming towards him reaching for his right hand pocket; that he thought he was reaching for a knife and thought that he would kill him, so he shot him. The defendant's wife testified substantially to the same state of facts as her husband. The defendant's wife stated that about two or three hours

after the shooting, she found under her dresser the knife which deceased had laid on the kitchen table. Mrs. Lizzie Spence, the defendant's mother-in-law, and Mrs. Mattie Lovvorn, his stepmother, corroborated defendant as to the fact of deceased breaking away from Mrs. Spence. It was shown that the knife with the picture of a nude woman was exhibited in evidence in a former trial but it had been lost or misplaced before the present trial.

In rebuttal, the witness Vance testified that on this Sunday afternoon Mrs. Lovvorn stated in the presence of her husband on the front porch that defendant shot deceased for nothing; that she begged her husband not to shoot Loughery, that she told deceased to get out of the house because Lovvorn was going to shoot him; that deceased laughed and said "Howard wouldn't shoot me", and that when this statement was made, defendant shot. The mother of the deceased testified in rebuttal that deceased had stayed at her house before he was killed on Sunday; that she found a knife where he had stripped that Sunday morning and that the knife did not have the picture of a nude woman on its handle. Evidently both the deceased and the defendant had been drinking too much. The theory of the defendant is in direct conflict with the testimony of Vance and other officers who say that the defendant's wife said that deceased was doing virtually nothing to him when he shot him. The signed confession also is in line with what the officers testified to and there is no showing that the confession was not properly given.

We therefore cannot say that the evidence preponderates against the verdict of the jury.

It is also insisted that the court below erred in permitting Captain Vance to relate the statement of Mrs. Lovvorn made in the presence of the defendant at the

time of the shooting. Vance testified in the absence of the jury that defendant was drunk at the time the statement was made but that he knew what was going on. Vance testified that the defendant was present when his wife made this statement and·it appears that the defendant remained silent in the face of the accusation. It seems that the defendant's contention is that this testimony of his wife was not admissible because of the fact that defendant denied having heard his wife's statement.

██ The general rule is that if an accusatory statement is. made in the presence and hearing of the defendant and he remains silent, though having opportunity to speak, then the fact of the making of the statement and the silence of the accused are admissible in evidence. *Kendrick* v. *State*, 28 Tenn. 722; *Deathridge* v. *State*, 33 Tenn. 75; *Queener* v. *Morrow,* 41 Tenn. 123; *Phelan* v. *State*, 114 Tenn. 483, 88 S. W. 1040; *Green* v. *State*, 97 Tenn. 50, 36 S. W. 700; *Low* v. *State,* 108 Tenn. 127, 65 S. W. 401; *Winfree* v. *State,* 174 Tenn. 72, 123 S. W. (2d) 827; *Camper* v. *State,* 187 Tenn. 511, 216 S. W. (2d) 18.

In *Queener* v. *Morrow,* supra, the Court said:

"We have seen that it is indispensable, that the party should have heard, and understood, the statement, and if this be doubtful, the fact may be determined by the jury; 3 Phill. on Ev., note 191, page 194.

"It does not appear that this specific objection was urged on the trial; and in the state of the record, we must take it, that the fact was properly referred to the jury."

In Elliott on Evidence, Vol. 1, Sec. 221, it is said: "But in order that admissions may be inferred from silence or acquiescence, it must usually appear that the language or conduct in question were known and under-

stood by the party claimed to have acquiesced therein, and that he was naturally called upon to take some action or make some response thereto. Such evidence should be received with caution but if it is uncertain whether the party claimed to have acquiesced therein heard and understood the statements, the question is usually one for the jury to determine.'' *Phelan* v. *State*, supra.

 In the present case, no exception was made to the judge's charge to the jury. It therefore must be presumed that the trial court charged the jury fully and correctly as to the weight to be given this testimony.

We have considered all the assignments of error and find them without merit and the judgment of the lower court is affirmed.

All concur.