IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2001

**STATE OF TENNESSEE v. MICHAEL BIKREV**

**Appeal from the Circuit Court for Williamson County**
**No. I-1100-336-A     Donald P. Harris, Judge**

_____

**No. M2001-01620-CCA-R3-CD - Filed February 4, 2002**

_____

The Defendant, Michael Bikrev, was convicted of theft of property over $1,000.00 by a Williamson County jury. After a sentencing hearing, the Defendant was sentenced as a Range I standard offender to three years in the Department of Correction. The trial court suspended the sentence conditioned upon the Defendant serving one year in the Williamson County jail and completing four years of probation. On appeal, the Defendant contends that (1) the evidence is insufficient to support his conviction, (2) the State did not prove venue, (3) the trial court erred in admitting evidence of a tacit admission made by the Defendant, and (4) the trial court erred in sentencing the Defendant.[1] We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Jeff Preston Burks, Franklin, Tennessee, for the appellant, Michael Bikrev.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ron Davis, District Attorney General; and Lee Dryer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The victims in this case, Brian and Barbara Maislin, operate a computer delivery business. In situations where delivery is not practical, the Maislins conduct business out of a storage unit in a "Stor N Lock" in Bellevue, Tennessee. The "Stor N Lock" is located in Davidson County. The

_____

[1]The Defendant raises two challenges to the sentence imposed by the trial court. First, the Defendant contends that he should have been afforded an alternative sentence. Second, the Defendant argues that the trial court improperly refused to credit him for time served in the Williamson County jail. We will address these two sentencing issues together.

Maislins acquire business via advertisements in various newspapers. The Defendant and his wife, Myra Bikrev, responded to one such advertisement and informed the Maislins that they were interested in buying a computer for Ms. Bikrev's business. The Defendant met the Maislins at the storage unit in Bellevue and bought a computer, but declined to provide any information, such as an address or phone number, that would allow Mr. Maislin to give him a receipt.

On July 28, 1999, the day after buying the computer, the Defendant called the Maislins and stated that he was having problems with the monitor. Mr. Maislin told the Defendant that he would have to speak with Ms. Maislin who did the computer repair work. The Defendant would not leave his phone number with Mr. Maislin, but Mr. Maislin noted the number from his caller identification display. The Defendant called again the next day, and Mr. Maislin offered to come to the Defendant's residence and fix the monitor or to allow the Defendant to return it. The Defendant declined both options.

On July 30, the Maislins discovered that their storage unit had been burglarized and ten computers, three Cannon 5100 printers, five sets of Phillips-Magnavox speakers, four monitors, and various "mice" and cables were missing. Brian Billingsley, the repair man at the Bellevue "Stor N Lock," testified that the lock had been pried off the Maislins' storage unit, and the latch had to be replaced. Darcy Rowe, the manager of the "Store N Lock," described the surveillance cameras used at the storage facility, and the State introduced a surveillance tape made at the time of the offense in which a hand with a large ring on one of the fingers can be seen pushing the camera to an angle where only the sky is visible.

Mr. Maislin testified that he viewed the surveillance tape and recognized the ring from the tape as being similar to one worn by the Defendant. Mr. Maislin used the number that appeared on his caller identification display the night the Defendant called him to get in touch with the Defendant. Mr. Maislin inquired about the monitor the Defendant had previously complained about and offered to come out to the Defendant's residence and repair it. Reluctantly, the Defendant agreed. Upon arriving at the Defendant's residence in Williamson County on North Chapel Road in Franklin, the Maislins observed that the Defendant was wearing the ring they had recognized on the surveillance video. Additionally, while in the house, Mr. Maislin noticed a box that looked very similar to the box which contained the speakers missing from their storage unit. When the Defendant noticed Mr. Maislin looking at the box, he ushered Mr. Maislin away from the area.

The Maislins informed the Defendant that they recently had a break-in at the storage unit. Mr. Maislin testified that the Defendant seemed very interested in the investigation. In fact, the Defendant called the Maislins several times to inquire about the progress of the investigation.

The Maislins informed Detective William Cothren of the Metro Police Department of their suspicions regarding the Defendant. On August 2, Detective Cothren, along with Detectives Tommy Jarrell and Rick Hagan of the Metro Police Department and T.R. Parker of the Williamson County Sheriff's Department, went to the Defendant's residence in order to question him. The detectives informed the Defendant about the surveillance tape and the Maislins' suspicions. The Defendant

told the detectives that he "goofed around," jumped up and hit the camera. Detective Cothren told the Defendant that if he could jump and hit the camera he should be playing professional basketball because the camera was twelve feet off the ground. The Defendant stated that he was very athletic. The Defendant denied any involvement in the theft, and consented to a search of his home. The detectives found nothing in the home or on the premises.

Following the detectives' visit to his home, the Defendant called the Maislins and told them that the police had been there and asked what the "problem" was. Mr. Maislin hung up the phone. The Defendant continued calling, and, becoming angry, Mr. Maislin told the Defendant that he knew the Defendant had stolen the computers and the police were handling the situation. At that point, the Defendant's wife interjected and stated that she knew where the Maislins lived, and that they "better watch themselves." The Defendant's wife further stated that the Maislins would never find their "shit" and the police could not find "a turd in an outhouse."

On October 7, 2000, Deputy Tamika Sanders of the Williamson County Sheriff's Department received a "found property" call from North Chapel Road. Johnny Talley, Jr., who lives approximately three-fourths of a mile from the Defendant, found several trash bags and boxes of computer equipment while working on his land. Deputy Sanders took possession of the items and gave them to Detective Hagan. The equipment was wet when recovered.

The Maislins identified the items recovered by Deputy Sanders as the equipment stolen from their storage unit. Detective Hagan gave the equipment to the Maislins. The Maislins used blow dryers to dry the computers. Ms. Maislin entered the registry file of one of the computers and noticed that a software program for one of the printers that had been stolen from the storage unit had been loaded onto one of the computers that had been recovered by Deputy Sanders. The program was loaded on August 1, 2000, several days after the printers were stolen. Ms. Maislin also noticed several Ukranian names in the registry file of the recovered computer, and testified that the Defendant is of Ukranian descent. Detective Hagan also examined the computers and discovered several files registered to or containing the name "Myra," which was the Defendant's wife's name.

## SUFFICIENCY

The Defendant contends that the evidence presented at trial is insufficient to support the jury's verdict of guilt beyond a reasonable doubt. We disagree. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176

(Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Tennessee Code Annotated section 39-14-103 provides that "[a] person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Theft of property with a value of over $1,000 is a Class D felony. See Tenn. Code Ann. § 39-14-105 (3).

The "Stor N Lock" surveillance tape revealed a hand with a ring identical to one worn by the Defendant moving a security camera near the time of the theft. Mr. Maislin observed a box similar to a speaker box stolen from his storage unit in the home of the Defendant. The stolen computer equipment was recovered three-fourths of a mile from the Defendant's home. Several files and programs found within the stolen computers bore the name of the Defendant's wife. The Maislins testified that the Defendant did not have their permission to enter the storage unit and remove the computer equipment. The Maislins also stated that the value of the recovered equipment was approximately $ 1,500 at wholesale.

Reviewed in the light most favorable to the State, this evidence is sufficient to support the jury's verdict of guilt beyond a reasonable doubt. This issue is without merit.

**VENUE**

The Defendant next contends that his conviction must be set aside because the State failed to prove that Williamson County was the correct venue in which to try him. We disagree. Mr. Maislin testified that his storage unit was located in Davidson County, and Deputy Sanders stated that the stolen equipment was recovered in Williamson County. "If one or more elements of an offense are committed in one county and one or more elements in another, the offense may be prosecuted in either county." Tenn.R.Crim.P. 18(b). Accordingly, the "taking" of the computer equipment did not have to occur in Williamson County. It is sufficient that the Defendant, at one time, exercised control over the equipment within Williamson County and without the permission of the victims. See Tenn. Code Ann. § 39-14-103.

Venue need be proved by only a preponderance of the evidence. See Tenn.Code Ann. § 39-11-201(e). "Slight evidence is enough to carry the prosecution's burden of preponderance if it is uncontradicted." Ellis v. Carlton, 986 S.W.2d 600, 602 (Tenn.Crim.App.1998). The Defendant argues that there is no evidence to suggest that the Defendant possessed the stolen equipment in Williamson County. Detective Hagan testified that the Defendant resides in Williamson County and the computers were recovered in Williamson County three-fourths of a mile from the Defendant's home. Furthermore, the computers contained files bearing the Defendant's wife's name when they were recovered. Deputy Sanders and Detective Hagan's testimony was sufficient for a rational jury to find that the Defendant exercised control over the equipment in Williamson County. The State satisfied its burden of proving venue, and this issue is therefore without merit.

## TACIT ADMISSION

The Defendant also argues that the trial court erred in admitting into evidence statements made to the victim by the Defendant's wife in the presence of the Defendant under the tacit admission rule. While we agree that the trial court erred in admitting the statements as a tacit admission, we find the error to be harmless because the statements were admissible as the statements of a co-conspirator.

"[W]hen a statement is made in the presence and hearing of one accused of an offense and the statement tends to incriminate him, or is of an incriminating character, and such statement is not denied or in any way objected to by him, both the statement and the fact of his failure to deny it or make any response to it, is admissible against him as evidence of his acquiescence in its truth." State v. Black, 815 S.W.2d 166, 176-77 (Tenn. 1991), quoting Ledune v. State, 589 S.W.2d 936, 939 (Tenn. Crim. App. 1979).

In the present case, after the police searched his home, the Defendant called Mr. Maislin and demanded to know what the "problem" was. Mr. Maislin informed the Defendant that he knew the Defendant had stolen the computers and that the police were handling the matter. At this point, the Defendant's wife interjected over the phone and stated that she knew where the Maislins lived and that they "better watch themselves." The Defendant's wife further stated that the Maislins would never get their "shit" back and the police could not find "a turd in an outhouse." The Defendant then told his wife to "shut up." The trial court admitted this exchange as a tacit admission on the part of the Defendant and gave a limiting instruction to that effect. While the Defendant's silence in the face of the Mr. Maislin's accusation is admissible as a tacit admission, the Defendant's wife's statements were not an accusation against the Defendant, but rather a threat directed at the victims, and were not admissible under the same theory.

However, we conclude that the admission of the wife's statements as a "tacit admission" is harmless because the statements were admissible as the statements of a co-conspirator. A conspiracy is a combination between two or more persons to commit a criminal act. State v. Lequire, 634 S.W.2d 608, 612 (Tenn. Crim. App. 1981). The evidence established that the Defendant and his wife worked in concert to exercise control over the Maislins' computer equipment. A conspiracy

does not have to be formally charged in order for statements made by co-conspirators to be admissible. See id.;Tenn. R. Evid. 803 (1.2)(E). Furthermore, once a conspiracy has been established, any statement made during the course of or in furtherance of that conspiracy is admissible against any conspirator. See id., at 613; Randolph v. State, 570 S.W.2d 869, 871 (Tenn. Crim. App. 1978).

In State v. Henry, 33 S.W.3d 797, 803 (Tenn. 2000), our supreme court held that "the commission of the offense . . . does not imply that the conspiracy automatically included all later statements pertaining to the concealment of the offense." See also State v. Walker, 910 S.W.2d 381, 386 Tenn. 1995). Henry requires an analysis of the facts in each case to determine if the common goal of the conspiracy was still in existence at the time of the statements, and if the statements were made in furtherance of that goal. See Henry, 33 S.W.3d at 803. In the present case, we find that the conspiracy was ongoing, and the statements admissible because the statements made by the Defendant's wife were made to threaten the victims in an effort to impede the criminal investigation against the Defendant.

Accordingly, the trial court erred by admitting the statements made by the Defendant's wife under the tacit admission rule, however, the error was harmless because the statements were admissible as co-conspirator statements. See Tenn. R. Evid. 803 (1.2)(E).

## SENTENCING

Finally, the Defendant contends that the trial court erred in sentencing him because he was not afforded an alternative sentence and he was not given credit for time served in the Williamson County jail. We disagree.

When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); State v. Lane, 3 S.W.3d 456, 462 (Tenn. 1999). Guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing can be found in Tennessee Code Annotated section 40-35-103(1), which sets forth the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

See State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000); State v. Ashby, 823 S.W.2d 166, 170 (Tenn. 1991).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The trial court should also consider the potential for rehabilitation or treatment of the defendant in determining the appropriate sentence. See id. § 40-35-103(5).

The presentence report reflects that at the time of sentencing the Defendant was twenty-one years old, married, and a high school graduate. His family immigrated to the United States in 1991, and the Defendant attended high school in New Jersey. He was previously employed at an auto service business, but was terminated after stealing a pistol from a customer's automobile. The Defendant was most recently employed by a temporary service provider.

The Defendant contends that the trial court erroneously denied him alternative sentencing. The Defendant properly asserts that, because he was convicted of a Class D felony, he is presumed eligible for alternative sentencing. See Tenn. Code Ann. § 40-35-102 (6). After finding two enhancement factors and one mitigating factor,[2] the trial court imposed a sentence of three years.

---

[2] As enhancement factors, the trial court found that the Defendant had a previous history of criminal conduct (continued...)

However, the trial court suspended that sentence conditioned upon one year of incarceration in the Williamson County jail and the completion of four years probation.

Two alternative sentences available to sentencing courts are "[a] sentence of confinement which is suspended upon a term of probation supervision" and "[a] sentence of periodic confinement which may be served in a local jail or workhouse in conjunction with a term of probation." Tenn. Code Ann. § 40-35-104; see also State v. Dowdy, 894 S.W.2d 301, 304 (Tenn. Crim. App. 1994) (split confinement is one of the alternative sentencing options under Tennessee Code Annotated section 40-35-104). The trial court imposed an appropriate alternative sentence under Tennessee Code Annotated section 40-35-104. This issue is without merit.

The Defendant also challenges the trial court's refusal to give him credit for time served in the Williamson County jail. The Defendant was incarcerated in the Williamson County jail from August 21, 2000 to March 1, 2001 pursuant to an unrelated probation violation. On October 11, 2000, while incarcerated, the Defendant was served with the arrest warrant for the present case. The Defendant remained in custody after he concluded his sentence for the probation violation, and was sentenced in the present case on May 4, 2001. During sentencing, the trial court credited the Defendant for time served in custody after the completion of the probation violation sentence, a total of sixty-one days. The Defendant now contends that he is entitled to sentence credit for all the time served in custody after the service of the arrest warrant for the present case.[3] We disagree.

> Tennessee Code Annotated section 40-23-101 (c) provides that
> [t]he trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse, or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail or juvenile court detention prior to waiver of juvenile court jurisdiction, or county jail or workhouse, pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in the jail, workhouse or penitentiary subsequent to any conviction arising out of the original offense for which the defendant was tried.

A defendant is not entitled to credit for time he spent in jail for other offenses. See Trigg v. State, 523 S.W.2d 375 (Tenn. Crim. App. 1975).

---

[2](...continued)
in addition to that necessary to establish the appropriate range, and that he was on probation at the time he committed the present offense. See Tenn. Code Ann. §§ 40-35-114 (1), (13)(c). In mitigation of the Defendant's sentence, the trial court found that his conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113 (1). However, the trial court gave this mitigating factor little weight.

[3]The Defendant argues that the trial court erred by ordering his sentence to be served consecutively to the previous sentence. The trial judge did not impose consecutive sentences, and it is actually the refusal of the trial judge to allow the Defendant jail time credit that the Defendant contests.

The trial court properly credited the Defendant for only the sixty-one days he was incarcerated after the conclusion of the unrelated probation violation sentence. This issue is without merit.

## CONCLUSION

After a thorough review of the record, we conclude that the evidence supports the jury's verdict of guilty beyond a reasonable doubt, venue was proven by a preponderance of the evidence, the trial court's error in admitting the Defendant's wife's statements under the tacit admission rule was harmless, and the Defendant was properly sentenced. For the foregoing reason, the judgment of the trial court is AFFIRMED.

_____
DAVID H. WELLES, JUDGE